**A. Dewayne OLDHAM, Principal of Westmoreland High School, Plaintiff/Appellant,**

v.

**The AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF TENNESSEE, INC., Defendant/Appellee.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

May 19, 1995.

Rehearing Denied June 9, 1995.

Permission to Appeal Denied by Supreme Court Oct. 30, 1995.

---

J. Russell Heldman and Ernest W. Williams, Franklin, for Plaintiff/Appellant.

William M. Leech, Jr., James W. White, and Brian A. Lapps, Jr., Nashville, for Defendant/Appellee.

## OPINION

CANTRELL, Judge.

After being threatened by the American Civil Liberties Union (ACLU) with legal action if he allowed school-sponsored prayer at a high school graduation ceremony, a Sumner County principal sought declaratory and injunctive relief. The Chancery Court of Sumner County dismissed the plaintiff's complaint because the chancellor found that the case was non-justiciable under the Tennessee Declaratory Judgment Act, that it was theo-

retical and not real, and because the plaintiff sought an advisory opinion, which the court was unable to render. We affirm.

## I.

The plaintiff-appellant is Mr. A. Dewayne Oldham, principal of Westmoreland High School in Sumner County. In the Spring of 1993, as graduation approached, the ACLU sent letters to school superintendents throughout the state. The letter recounted the earlier distribution of letters by an organization called the American Center for Law and Justice, which allegedly informed school administrators that a new law had been passed, permitting organized prayer at public school graduations, and encouraging them to sponsor graduation prayers.

The ACLU's letter stated that the United States Supreme Court had ruled, in the case of *Lee v. Weisman*, (505 U.S. 577, 112 S.Ct. 2649, 120 L.Ed.2d 467, (1992)), that public schools may not sponsor prayer at graduation ceremonies. The letter purported to summarize the High Court's holding in *Lee v. Weisman*, and warned recipients: "Please understand that if your school system does sponsor prayer at its graduation ceremonies and we are contacted by students and their families, we will most likely pursue litigation."

The law that the earlier letter was apparently referring to was an amendment to Tenn.Code Ann. § 49–6–1004, a statute which deals with a period of silence or prayer in public schools. The Legislature had recently added Subsection (c) to that statute. Subsection (c) reads:

(c) Notwithstanding the provisions of subsections (a) and (b), nonsectarian and nonproselytizing voluntary benedictions, invocations or prayers, which are initiated and given by a student volunteer or student volunteers may be permitted on public school property during school-related noncompulsory student assemblies, school-related student sporting events, and school-related commencement ceremonies. Such permission shall not be construed to indicate any support, approval or sanction by the state of Tennessee or any govern-

mental personnel or official of the contents of any such benedictions, invocations or prayers or to be the promotion or establishment of any religion, religious belief or sect.

## II.

On June 7, 1993, Mr. Oldham filed a Complaint for Declaratory Judgment and Injunctive Relief in the Chancery Court of Sumner County. He alleged that his students had requested that they be permitted to initiate voluntary prayers during their upcoming graduation and other student related events, and that the ACLU's letter had caused a "chilling effect" and restraint upon the constitutional free speech right of the students. He further alleged that the letter had the effect of coercing him to abdicate his responsibility to accommodate the free speech rights of his students out of fear of being sued, and that the defendant's letter had misstated the meaning of the Supreme Court's holdings in *Lee v. Weisman.*

The plaintiff sought to have the court enjoin the ACLU from sending letters or making statements containing threats to file lawsuits on the issue of school prayer; have the court declare Tenn.Code Ann. § 49–6–1004(c) to be constitutional under the U.S. and Tennessee Constitutions; and have the court declare that student-initiated voluntary prayers at Westmoreland High School graduation are protected by the First Amendment's Free Speech Clause, and by Article 1, Section 19 of the Tennessee Constitution.

The ACLU had the case removed to the United States District Court and filed a Motion to Dismiss. The Court denied the ACLU's motion, but remanded the case back to the Sumner County Chancery Court for decision under the Tennessee Constitution, because the federal court found that it contained no justiciable case or controversy under Article III of the U.S. Constitution, and that the court therefore lacked subject matter jurisdiction to hear it.

Back in state court, Mr. Oldham filed a Motion for Summary Judgment, asking the court to issue a declaratory order that student-initiated school prayer at Westmoreland High School does not violate the United States Constitution, that Mr. Oldham is not required to censor, disallow or prevent such prayer, and that Tenn.Code Ann. § 49–6–1004(c) is constitutional as it pertains to commencement ceremonies, and does not violate the Establishment Clause.

The ACLU filed a Motion to Dismiss, contending that the facts presented no case or controversy upon which to base a declaratory judgment, and that the plaintiff lacked standing to pursue his claims. The plaintiff's and the defendant's motions also contained opposing arguments about the constitutionality of Tenn.Code Ann. § 49–6–1004(c).

The chancery court rendered a "Final Judgment" on May 19, 1994, granting the ACLU's motion to dismiss, on the ground that the case was non-justiciable under the Tennessee Declaratory Judgment Act, because "the case is theoretical and not real and because plaintiff seeks an advisory opinion which this court cannot render."

## III.

We do not think it necessary to address the constitutional arguments of the parties, because we believe the trial court was correct in dismissing this case for lack of a justiciable controversy under the Declaratory Judgment Act, Tenn.Code Ann. § 29–14–101 et seq.

The Declaratory Judgment Act has given the courts broad powers to construe statutes and written instruments:

**29–14–103. Construction of statutes and written instruments.**—Any person interested under a deed, will, written contract, or other writings constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status or other legal relations thereunder.

Relevant case law has held that the expansive powers found in the statute may only be exercised in those situations where the parties can demonstrate the existence of

a justiciable controversy, the elements of which the Tennessee Supreme Court described as follows: "... the question must be real and not theoretical; the person raising it must have a real interest, and there must be some one having a real interest in the question who may oppose the declaration sought." *Cummings v. Beeler,* 189 Tenn. 151, 223 S.W.2d 913, 915 (1949), quoting *Miller v. Miller,* 149 Tenn. 463, 261 S.W. 965, 972 (1924). Thus, the courts will grant declaratory relief only when the case involves present rights that have accrued under presently existing facts. *Dobbs v. Guenther,* 846 S.W.2d 270 (Tenn.App.1992).

The appellant insists that his position of responsibility over commencement exercises at Westmoreland High School, combined with the differences he has with the appellee over the constitutionality of Tenn.Code Ann. § 49–6–1004(c) meets the test cited above.

Though no doubt Mr. Oldham considers his interest to be real, and the ACLU's opposition to the declaration he seeks to likewise be a real interest, we believe that the interests represented in this case should be characterized as theoretical and contingent, rather than as the sorts of legally protectible interests involved in the *Miller* and *Cummings* cases, and other cases that the courts have deemed appropriate for declaratory judgment.

In *Miller v. Miller,* the complainant was the widow and executrix of a deceased testator. The testator had given his wife a life estate in his real property, "for the use and benefit of herself and my children," with the remainder to his bodily heirs. The widow was also given the power to sell the real property, if such a sale was necessary for the support of herself and the children.

When she attempted to sell part of the property, the prospective purchasers would not consummate the agreement, because they were uncertain about her ability to convey a good title under the will. Presumably, the problem was a potential action by a beneficiary under the will, who could contend that the sale was invalid because it had not been necessary.

Mrs. Miller sought a declaratory order to construe the will to affirm her right to exercise her discretion to sell the property, whenever she deemed it necessary, without that discretion being subject to review or control by the courts. Such a construction would enable her to execute a deed that would pass a good and valid title to the purchaser. The named defendant was her minor child, who possessed a legal interest potentially adverse to the declaration she sought.

Both parties thus possessed legally recognized property interests that were affected by the will. Though there was no imminent threat of a lawsuit, the existence of those opposing interests rendered the construction of the will a proper subject for declaratory judgment.

In *Cummings v. Beeler,* the Tennessee Secretary of State asked the court for a declaration that an act of the Legislature which ordered him to hold a special election was constitutional. The Attorney General had issued an opinion that the statute was unconstitutional. In deciding that the case presented a justiciable question, the court noted that the statute in question required the Secretary of State to spend large sums of money to hold the special election, and it described his interest thusly:

"If the Attorney General was correct in his opinion in holding that the law was invalid and unconstitutional, the Secretary of State would have spent public funds under the authority of a law which was illegal and without effect. This expenditure would have been made in face of the declared official opinion of his official legal advisor.... It would therefore clearly appear that the Secretary of State has a real interest, officially, in determining whether or not the legislation is valid before spending these public funds." *Cummings v. Beeler,* 189 Tenn. 151, 223 S.W.2d 913, 915 (1949).

The court also found that the Comptroller and the Election Commissioners, who had been made defendants, all had an interest in the determination of the question, because the correct performance of their official duties depended on that determination. The Attorney General was named as a party defendant because the Declaratory Judgment Act required then, as it does now, that where the constitutionality of an act is involved, the

Attorney General must be made a party. See Tenn.Code Ann. § 29–14–107.

The present case and *Cummings v. Beeler* have some similarities, in that both involve the constitutionality of a statute, and in both the plaintiff is a public official who feels that a ruling will relieve him from an uncertainty about his duties.

One important difference, however, is that in the present case, the controverted statute does not require that the plaintiff do anything, or that he refrain from doing anything. He may have an "interest" in the constitutionality of Tenn.Code Ann. § 49–6–1004(c), in the form of an absorption or involvement in the questions it presents, but he has not been vested with any rights or saddled with any obligations arising from the statute.

Likewise, the ACLU is very "interested" in First Amendment issues, but at present it has no legal interest in the question of graduation prayers at Westmoreland High School. Should the contingencies mentioned in its letter occur, it may bring suit against Mr. Oldham and other officials of the Sumner County School System, and then the question of the constitutionality of Tenn.Code Ann. § 49–6–1004(c) may become justiciable. Until then, the question as regards these parties is only theoretical, and not a proper subject for declaratory judgment.

### IV.

We also note that the fact that a court may have the power to render a declaratory judgment does not mean that a complainant may compel a court to do so. Numerous cases have stated that the making or refusing of a declaratory judgment is discretionary with the trial court. See, for example, *U.S.F. & G. Co. v. Askew,* 183 Tenn. 209, 191 S.W.2d 533 (1946); *Ball v. Cooter,* 185 Tenn. 631, 207 S.W.2d 340 (1948); *East Sevier County Utility District v. Wachovia Bank & Trust Co.,* 570 S.W.2d 850 (Tenn.1978). But see cf. *Dobbs v. Guenther,* 846 S.W.2d 270 (Tenn.App.1992). The action of the trial court in refusing a declaration will not be disturbed on appeal unless such refusal is arbitrary. *Southern Fire & Casualty v. Cooper,* 200 Tenn. 283, 292 S.W.2d·177 (1956).

### V.

The order of the trial court is affirmed. Remand this case to the Chancery Court of Sumner County for further proceedings consistent with this opinion. Tax the costs on appeal to the· appellant.

TODD, P.J. (M.S.), and LEWIS, J., concur.

### *ORDER*

Attorneys for appellant Dewayne Oldham have petitioned this court for a rehearing. They contend that in our opinion of May 19, 1995, we failed to consider two motions they filed in chancery court to supplement their complaint. Those motions alleged facts which they insist had the effect of rendering their Petition for Declaratory Judgment more than merely "theoretical," as the chancery court found it to be, and as we affirmed.

We regret it if we created the impression that we did not consider the entire record on appeal prior to releasing our opinion. We did consider the entire record, but perhaps we did not give some parts of it the attention that the appellant feels they deserved.

We note that the trial court denied the plaintiff's Second Motion to Supplement the Complaint, because it was an attempt to introduce post-judgment facts into the record, and because he found that even if taken as true, the motion would not create a justiciable issue under the Tennessee Declaratory Judgments Act. In his brief, the appellant argued that it was error for the trial court to deny the motion. We acknowledge that we did not directly address this question in our opinion.

The motion in question contained the affidavit of the appellant, stating that on May 28, 1994, he permitted the president of Westmoreland High School's senior class to lead the entire assembly in a recital of the Lord's Prayer during the school's commencement exercises.

The motion also contained as exhibits a story in the *Nashville Banner* which reported that the ACLU was raising money for a lawsuit challenging student-led prayers at non-compulsory public school events, and fund-raising letters and pages from the

ACLU newsletter indicating an intention to challenge Tenn.Code Ann. § 49–6–1004(c), the statute whose constitutionality the appellant wishes this court to affirm. We note that these same exhibits were attached to the plaintiff's first Motion to Supplement the Complaint, which was granted by the trial court.

The appellant contends that his action in permitting graduation prayer in accordance with Tenn.Code Ann. § 49–6–1004(c), combined with the ACLU's apparent determination to bring suit at some point to test the constitutionality of that statute, renders his Petition for Declaratory Judgment real rather than theoretical, and therefore justiciable.

We respectfully disagree. We believe the chancellor was correct in finding that the appellant was seeking an advisory opinion, which the chancery court could not render, and that the facts alleged in the supplemental pleadings do not create a justiciable issue where none existed before.

The appellant has cited several cases in support of his argument that the trial court should have found a justiciable issue to exist in this case. However, none of the cases he cites presents a set of facts comparable to those in the case before us, and none of them appears to us to support as expansive an interpretation of the proper scope of the remedy of declaratory judgment as he advocates.

The Petition to Rehear is denied.

/s/ Henry F. Todd
HENRY F. TODD,
PRESIDING JUDGE
MIDDLE SECTION

/s/ Samuel L. Lewis
SAMUEL L. LEWIS,
JUDGE

/s/ Ben H. Cantrell
BEN H. CANTRELL,
JUDGE